**E-FILED on** 3/31/2012

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

FRANCES AVIDANO,

    Plaintiff,

    v.

MICHAEL J. ASTRUE,
Commissioner of Social Security

    Defendant.

No. C-09-3274 RMW

ORDER GRANTING PLAINTIFF'S ALTERNATIVE MOTION FOR SUMMARY JUDGMENT OF REMAND AND DENYING THE COMMISSIONER'S CROSS-MOTION

**[Re Docket Nos. 15 and 16]**

Plaintiff Frances Avidano ("Avidano") brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of a final decision by the defendant Commissioner of Social Security ("Commissioner") denying Avidano's claim for disability insurance benefits under the Social Security Act ("Act"). Presently before the court are the parties' cross-motions for summary judgment. Having considered the papers submitted by the parties and the entire administrative record, for the reasons set forth below, the court grants Avidano's alternative request for remand and denies the Commissioner's cross-motion for summary judgment.

# I. BACKGROUND

## A. Avidano's Age, Education, and Vocational History

Avidano was born on December 7, 1959. Tr. 40. Her highest level of education is tenth grade. Tr. 42. She last worked in 2003 as an in-home caregiver for her former mother-in-law. Tr. 40.

## B. Avidano's Medical History and Prior Disability Benefits

Avidano was involved in a serious motorcycle accident in 1972, which resulted in a significant degree of neurological impairment, including a learning disability. Tr. 17. Avidano received treatment from El Camino Hospital for this accident in 1972 and had her last outpatient visit there in 2005. Tr. 144. Also, she suffered a back and neck injury when she fell at work as a waitress in 1991. Tr. 19. Avidano applied for and received supplemental security income ("SSI") from 1993-2006. Tr. 136. As part of the 1993 application, Dr. Raymond L. Lagger, M.D., wrote a letter to the Social Security Administration ("SSA") and opined that Avidano would be unable to engage in gainful employment for the foreseeable future. Tr. 237. Dr. Lagger also opined that Avidano's ongoing complaints of neck and low back pain precluded manual work. *Id.* Beginning in October 2005, Avidano was incarcerated for a parole violation. Tr. 102. In November 2006, the Commissioner terminated her SSI benefits.[1] Tr. 136.

## C. Avidano's Current Claim

After her release from prison in 2007, Avidano reapplied for SSI. Tr. 105. She claimed she was disabled as of March 22, 1993 because of head and back injuries, hepatitis C, and a head injury from the motorcycle crash in 1972. Tr. 140. In conjunction with the application, Clark E. Gable, M.D., a Board-eligible internist, examined Avidano. Tr. 246-48. Dr. Gable found no muscle atrophy, normal range of motion of the neck, relatively normal range of motion of the shoulders, and fairly good grip strength. Tr. 247. While Dr. Gable stated that Avidano was able to get on and off the table with ease, he also noted that she was clumsy on her heels and toes and appeared to have a

---

[1] The Commissioner will suspend SSI payments to an individual who is incarcerated, beginning with the first full month in which the individual is incarcerated. *See* 20 C.F.R. § 416.1325(a). If an individual's benefits are suspended for 12 or more consecutive months, the Commissioner terminates the individual's benefits. *See* 20 C.F.R. § 416.1335.

mild foot drop. Tr. 246-47. Dr. Gable concluded that based on the medical history he collected and his examination, without the benefit of any medical records, Avidano could sit or stand and walk for up to six hours per day with usual breaks and lift 20 pounds frequently and probably 40 pounds occasionally. Tr. 248. Avidano has received treatment from the Pain Management Clinic since March 10, 2003. Tr. 19. She takes Oxycontin and Soma to help alleviate her pain. *Id.* In March 2008, Gregory White, M.D., Avidano's regular treating physician, completed a form for General Assistance stating that she had a disorder that limited her employability. Tr. 268. Dr. White found that Avidano had degenerative disc disease of the lumbar spine and cervical spine. *Id.*

The Commissioner denied Avidano's application initially and on reconsideration. Tr. 66-67. A hearing was held on March 10, 2009 before an administrative law judge ("ALJ"). Tr. 31-65. The ALJ issued a decision on March 26, 2009, finding that Avidano could perform work existing in significant numbers in the national economy. Tr. 11-26. Avidano requested a review of the ALJ's decision; the Appeals Council denied the request finding no reason for review. Tr. 1-3. Consequently, the ALJ's decision became the Commissioner's final decision.

### D. The ALJ's Five Step Sequential Evaluation Decision

The ALJ found Avidano to be "not disabled" at the fifth step of the disability determination process.

At step one, the ALJ found that Avidano has not engaged in substantial gainful activity since the alleged onset date of disability. Tr. 16. At step two, the ALJ found that Avidano has three severe impairments: (1) hepatitis C; (2) degenerative disc disease; and (3) memory problems. *Id.* Dr. Gable noted that Avidano claimed to also suffer from migraine headaches and numbness in the left lower extremity. Tr. 247. The ALJ did not credit either of these impairments as severe impairments. Tr. 16. At step three, the ALJ determined that Avidano did not have an impairment or combination of impairments that met or medically equaled a listed impairment. *Id.*

Prior to step four, the ALJ determined that Avidano has the residual functional capacity ("RFC") to perform sedentary work that consists of simple one-to-two step tasks. Tr. 17. Sedentary work involves lifting no more than ten pounds at a time and occasional walking and standing. 20 C.F.R. § 416.967(a). In reaching this RFC determination, the ALJ found Avidano's statements

concerning the intensity, persistence, and limiting effects of her subjective symptoms not entirely credible. Tr. 18. As to cognitive impairment, the ALJ stated the he did not doubt the presence of such an impairment, just that there were no current medical records in the file to substantiate the claimant's allegations. *Id.* The ALJ made similar statements as to Avidano's physical impairments. Tr. 19. To bolster his RFC determination, the ALJ pointed to Dr. Gable's report and questionnaires Avidano and her fiancé completed which indicated that she is able to do simple tasks, including doing laundry, washing dishes, cooking, gardening and various other household duties. Tr. 18-20. Finally, the ALJ noted that any pain Avidano is currently experiencing appears to be well controlled by her medication regimen and that even though she has a mildly abnormal gait, she is capable of meeting the requirements of sedentary work activity. Tr. 20.

At step four, the ALJ determined that Avidano is unable to perform her past relevant work as a caregiver. Tr. 20-21. Finally, at step five, after considering Avidano's age, education, work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Avidano can perform. Tr. 21. The ALJ relied on the Medical-Vocational Guidelines ("Grids") as a framework for making his determination. *Id.* Because Avidano could not perform all of the functions of the sedentary work category given her cognitive impairment, the ALJ also relied on the testimony of a vocational expert to find Avidano "not disabled." *Id.* The vocational expert testified that even with Avidano's additional limitations, there were over 5,000 qualifying job titles in the Dictionary of Occupational Titles including cashier, parking lot attendant, and assembly lens inserter for glasses. Tr. 63-64.

## II. LEGAL STANDARD

### A. Standard for Review of Denial of Disability Insurance Benefits

The court has jurisdiction to review the Commissioner's decision denying benefits pursuant to 42 U.S.C. § 405(g). However, the district court's scope of review is limited. The Commissioner's decision (here the decision of the ALJ) will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. 42 U.S.C. 405(g); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). In this context, evidence is substantial if it is "more than a mere scintilla but less than a preponderance; it is such relevant evidence that a

ORDER GRANTING PLAINTIFF'S ALTERNATIVE MOTION FOR SUMMARY JUDGMENT OF REMAND AND DENYING THE COMMISSIONER'S CROSS-MOTION —No. C-09-3274 RMW
JLR 4

reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Charter*, 108 F.3d 978, 980 (9th Cir. 1997). To determine whether substantial evidence exists to support the ALJ's decision, the court examines the administrative record as a whole, and considers evidence both supporting and detracting from the Commissioner's conclusion. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). Where evidence exists to support more than one rational interpretation, the court must defer to the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Sandgathe*, 108 F.3d at 980.

### B. Standard for Determining Disability Benefits

To qualify for disability benefits under the Social Security Act, the claimant must be "disabled" within the meaning of the Act. Under the Act, disability means the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to last for a continuous period of not less than twelve months. *Ukolov v. Barnhart,* 420 F.3d 1002, 1004 (9th Cir. 2005). The claimant has the burden of proving that he is unable to perform past relevant work. *Id*. Where the claimant meets this burden, a prima facie case of disability is established. *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002). The Commissioner then bears the burden of establishing that the claimant can perform other substantial gainful work that exists in the national economy. *Id.*

Social Security Disability cases are evaluated using a five-step, sequential evaluation process. 20 C.F.R. § 416.920. In the first step, the ALJ must determine whether the claimant is presently engaged in substantially gainful activity. 20 C.F.R. § 416.920(a)(4)(i). If so, the claimant is not disabled; otherwise the evaluation proceeds to step two.

In step two, the ALJ must determine whether the claimant has an impairment or a combination of impairments that is severe. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant does not have a severe impairment, the claimant is not disabled and is not entitled to disability benefits, but if the impairment or combination of impairments is severe, the evaluation proceeds to step three.

In step three, the ALJ must determine whether the claimant's impairment or combination of impairments meets or medically equals the requirements of the Listing of Impairments. 20 C.F.R. §

ORDER GRANTING PLAINTIFF'S ALTERNATIVE MOTION FOR SUMMARY JUDGMENT OF REMAND AND DENYING THE COMMISSIONER'S CROSS-MOTION —No. C-09-3274 RMW
JLR                                                                5

404, Subpart P, App. 1.; 20 C.F.R. § 416.920(a)(4)(iii). If the claimant's condition meets or exceeds the requirements of a listed impairment, the claimant is disabled. If not, the analysis proceeds to step four.

At step four, the ALJ must first determine the claimant's RFC in view of the claimant's impairments and the relevant medical and other evidence in the record, and then determine whether the claimant is able to do any work that he previously performed in the past. If the claimant can still perform work that the individual has done in the past, the claimant is not disabled. If he cannot perform the work, the evaluation proceeds to step five. 20 C.F.R. § 416.920(a)(4)(iv).

At step five, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled. Taking into account a claimant's age, education, vocational background, and RFC, the Commissioner must show that the claimant can perform some work that exists in significant numbers in the national economy. This can be shown either by the testimony of a vocational expert or by reference to the Grids. *Tackett*, 180 F.3d at 1101; 20 C.F.R. § 416.920(a)(4)(v).

### III. ANALYSIS

Avidano claims the ALJ made four errors: (1) in failing to fully and fairly develop the record; (2) in failing to consider the combined effects of Avidano's impairments; (3) in failing to consider all of Avidano's severe impairments; and (4) in not crediting the opinions of Dr. White and Dr. Lagger and instead relying on Dr. Gable's report and Exhibits B10E and B11E, the questionnaires completed by Avidano and her fiancé, as substantial evidence. The court finds the first alleged error to be dispositive and, therefore, does not reach alleged errors (2) through (4).

**A.  Duty to Develop the Record Further**

Avidano first argues the ALJ erred by not fully developing the record before deciding that Avidano is "not disabled." Avidano contends the ALJ neither sought to obtain additional medical records known to be in existence and speaking to Avidano's disability nor ordered psychological and neuropsychological tests following Dr. Gable's evaluation. Motion at 5-7.

The Commissioner is required to develop the claimant's complete medical record for at least the 12 months preceding the month in which the claimant filed their disability application unless

there is reason to believe the development of an earlier period is necessary to determine the claimant's disability status. 20 C.F.R. § 416.912(d). In evaluating whether the ALJ fulfilled his duty to develop the record, the Ninth Circuit has held that an ALJ "has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). But, the ALJ is only required to develop the record further when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). Claimants whose SSI benefits are terminated because of a non-medical cause, including incarceration, are not entitled to a presumption of continuing disability in their re-application. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1172 (9th Cir. 2008). If the claimant is unrepresented, the ALJ has a heightened duty and must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Vidal v. Harris*, 637 F.2d 710, 711 (9th Cir. 1981). Finally, when a claimant is both unrepresented and suffers from a mental impairment, the ALJ's duty to carefully develop the record is even greater. *Thompson v. Schweiker*, 665 F.2d 936, 941 (9th Cir. 1982) (quoting *Rosa v. Weinberger*, 381 F. Supp. 377, 381 (E.D.N.Y. 1974)).

The Seventh Circuit has held that a prior file is completely irrelevant to a current disability determination if the claimed onset is for a different time period than the previous claim. *Reynolds v. Bowen*, 844 F.2d 451, 453-54 (7th Cir. 1988). In *Reynolds*, the court said this was especially true because the claimant did not allege any overlap back to the time period when the previous ALJ had found him to be disabled. *Id.* The SSA has developed their own handbook, the Hearings, Appeals and Litigation Law Manual (HALLEX), that outlines the agency's policy when dealing with disability claims. Even though HALLEX is not binding, it states that if the evidence in a prior file is material to the current claim, the Hearing Officer (HO) staff should recommend to the ALJ that the HO request the prior file. HALLEX I-2-1-10(C)(2). While the term "material" is not defined in this section of HALLEX, various situations are described where the prior file may not be required. HALLEX I-2-1-10(D)(1)-(5). One such situation is when at least four years have elapsed between the date of the prior notice of initial determination and the date of the new application. HALLEX I-2-1-10(D)(3). In another part of HALLEX, the SSA points to Black's Law Dictionary as a reference

ORDER GRANTING PLAINTIFF'S ALTERNATIVE MOTION FOR SUMMARY JUDGMENT OF REMAND AND DENYING THE COMMISSIONER'S CROSS-MOTION —No. C-09-3274 RMW
JLR                      7

for defining materiality. HALLEX I-3-3-6(A). Materiality there is defined as evidence that "is relevant and goes to the substantial matters in dispute, or has a legitimate and effective influence or bearing on the decision of the case." *Id.*

Here, Avidano was not represented by counsel at the ALJ hearing. Tr. 33-36. Also, Avidano suffered from a mental impairment caused by a previous motorcycle accident. Tr. 18. Despite these setbacks, Avidano informed Social Security employees of her earlier claim and related treatment. Tr. 136, 143-46. In a letter received by the San Jose Office of Hearings and Appeals, Avidano specifically requested that Dr. Lagger and El Camino Hospital be contacted to obtain all medical records. Tr. 214. In writing his final medical opinion, Dr. Gable was careful to note that his findings as to Avidano's abilities were based solely on the history he collected and his examination and not any other medical records or further exams by specialists ("Based on the history and findings of today's examination, *and without the benefit of records*, I believe the claimant can sit up to six hours . . . walk a total of six hours per day . . . lift 20 pounds frequently and probably 40 pounds occasionally . . . ."). Tr. 248 (emphasis added). The ALJ credited Dr. Gable's report and gave additional weight to questionnaires Avidano and her fiancé completed, which stated that Avidano could perform tasks like washing dishes, doing laundry, and cleaning the bathroom. Tr. 20. The ALJ acknowledged that there is a lack of objective medical evidence in the file regarding Avidano's mental and physical impairments, but did not order any additional testing or medical record production. Tr. 18-19. Instead, the ALJ stated that the medical evidence provided was sufficient to find Avidano had a RFC to perform sedentary work activity consisting of simple one-to-two steps. Tr. 20. The ALJ found Avidano "not disabled" because a vocational expert testified that sufficient jobs exist for individuals with the RFC described. Tr. 22.

The ALJ did not satisfy his duty to fully and fairly develop the record in this case. Prior to Avidano's incarceration, she received SSI benefits for many years. At the hearing before the ALJ, she was unrepresented and suffering from a mental impairment. Despite specifically requesting prior medical records be obtained, neither the SSA nor the ALJ requested these records. Instead, the ALJ merely looked at the evidence before him, Dr. Gable's report and a few questionnaires, and reached a decision. This was not sufficient. Avidano is not arguing she is entitled to a presumption

ORDER GRANTING PLAINTIFF'S ALTERNATIVE MOTION FOR SUMMARY JUDGMENT OF REMAND AND DENYING THE COMMISSIONER'S CROSS-MOTION —No. C-09-3274 RMW
JLR                                                           8

of continuing disability. Nor is Avidano's claim like *Reynolds* where the claimant sought disability benefits for a different time period. Instead, Avidano alleges in her current application a disability onset date of 1993, which is the same onset date as her prior application. As there was a lack of objective medical evidence in the record and the prior medical records spoke to Avidano's claimed disability period, they were necessary and should have been obtained. Also, the prior medical records are "material" under HALLEX; they are relevant and go to substantial matters in dispute or have legitimate and effective influence or bearing on the outcome. The contents of the missing medical records speak directly to the central dispute between the parties. Thus, while more than four years had passed between the initial determination and current application, the ALJ should have acted to get these records. At bottom, the relevant time period for which the record must be developed is not only limited to when the current claim was filed. If such a conclusion were allowed, it would never be necessary to look beyond the first 12 month period described in the regulation; the remaining language in the regulation would be superfluous. The regulation and HALLEX both contemplate the need to evaluate a broader set of past medical records in certain circumstances. This case clearly fits one of those circumstances.

As for additional medical exams, they are generally only requested after every reasonable effort has been made to obtain the necessary evidence from the claimant's medical sources. *See* 20 C.F.R. § 416.912(f). Therefore, this option should only be pursued here if the prior medical records cannot be obtained from Avidano's treating physicians or institutions.

Because the ALJ had a heightened duty to develop the record where Avidano was unrepresented and suffering from a severe mental impairment, and because the prior medical records were necessary to make the disability determination, the record was inadequate when the ALJ rendered his decision. This was an error of law and Avidano's alternative request for remand is granted.

### B. Other Alleged Errors

Since the court finds the record inadequate, the court does not reach the other alleged errors. However, it appears that the ALJ did an otherwise appropriate analysis.

**IV. ORDER**

For the foregoing reasons, the court grants Avidano's alternative request that the case be remanded for development of an adequate record and analysis based thereon.

DATED: 3/31/2012

RONALD M. WHYTE
United States District Judge